UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 15-2328-JGB-DTBx** | Date | February 22, 2016 |
|---|---|---|---|

Title  *Nicole Gomez v. Michaels Stores, Inc. et al.*

Present: The Honorable   JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Adele C. Frazier |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| C. Shaun Setareh | Gregory W. Knopp |

**Proceedings:**   **Order DENYING Plaintiff's Motion to Remand the Case to California State Court (Doc. No. 10) (HEARING HELD)**

Before the Court is Plaintiff Nicole Gomez's Motion to Remand the Case to California State Court. (Doc. No. 10.) After considering all papers submitted in support of and in opposition to the motion, the Court DENIES Plaintiff's Motion to Remand.

## I.  BACKGROUND

On September 30, 2015, Plaintiff Nicole Gomez ("Plaintiff") filed a putative wage and hour class action against Defendant Michaels Stores, Inc. ("Defendant" or "Michaels") and Does 1-50 in California state court. ("Complaint," Doc. No. 1-2.) On November 6, 2015, Plaintiff filed a First Amended Complaint. ("FAC," Doc. No. 1-3.) The FAC alleges the following claims against Defendant: (1) failure to provide rest periods; (2) failure to provide accurate written wage statements; (3) failure to timely pay wages upon termination or resignation; (4) violation of the Private Attorneys General Act ("PAGA"); and (5) unfair competition. (Id.)

Defendant answered Plaintiff's FAC on November 12, 2015, (Doc. No. 1-4), and that same day filed a Notice of Removal pursuant to the Class Action Fairness Act ("CAFA"), ("Notice of Removal," Doc. No. 1). Plaintiff filed a Motion to Remand the Case on January 11, 2016. ("Motion," Doc. No. 10.) Defendant opposed Plaintiff's Motion on February 1, 2016. ("Opp'n," Doc. No. 17.) Plaintiff filed a Reply on February 8, 2016. ("Reply," Doc. No. 20.)

## II. LEGAL STANDARD

CAFA vests federal district courts with original jurisdiction of any class action in which minimal diversity of citizenship exists between at least one member of the putative class and at least one defendant, the class consists of at least 100 members, and the matter in controversy exceeds $5,000,000, exclusive of interest and costs. 28 U.S.C. § 1332(d). A defendant seeking to remove a case to a federal court must file in the federal forum a notice of removal "containing a short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a). A defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold. Dart Cherokee Basin Operating Co., LLC v. Owens, 135 S. Ct. 547, 554 (2014). Evidence establishing the amount in controversy is only required when the plaintiff contests, or the court questions, the defendant's allegation. (Id.)

When a plaintiff contests a defendant's allegation that the amount in controversy exceeds $5 million, a defendant seeking removal must demonstrate, by a preponderance of evidence, that the aggregate amount in controversy exceeds the jurisdictional threshold. Dart Cherokee, 135 S. Ct. at 553-54. A defendant can satisfy this burden by submitting evidence outside the complaint, including affidavits or declarations, or other "summary-judgment-type evidence relevant to the amount in controversy at the time of removal." Ibarra v. Manheim Investments, Inc., 775 F.3d 1193, 1197 (9th Cir. 2015). The amount-in-controversy requirement is "tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure." Id. at 1198.

The removal statutes are construed restrictively, however, and the district court must remand the case if it appears before final judgment that the court lacks subject matter jurisdiction. Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108–09 (1941); 28 U.S.C. § 1447(c). However, no presumption against removal exists in cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court. Dart Cherokee, 135 S. Ct. at 554.

## III. DISCUSSION

Plaintiff argues that Defendant has failed to prove by a preponderance of the evidence that the amount in controversy is greater than $5 million. (Motion at 2-5.) Michaels disagrees. (Opp'n at 18-16.)

Plaintiff's claim under California Labor Code Section 203 is sufficient, standing alone, to establish by a preponderance of the evidence that the amount in controversy exceeds $5 million. Labor Code Section 203 provides that if an employer willfully fails to pay any wages of an employee who is discharged or quits, the wages of the employee shall continue to accrue as a penalty from the date due up to and including thirty days thereafter. Cal. Lab. Code § 203. Plaintiff's Section 203 claim is derivative of the claim that Michaels failed to provide rest breaks to the putative class. The FAC alleges that Michaels maintained a policy or practice of failing to provide rest breaks "at all relevant times," and that class members are therefore entitled to a rest break premium of one hour's pay for each class member on each day on which a rest break was not provided. (FAC ¶¶ 25-27.) Although the FAC does not set out a separate cause of action for Section 203, the FAC clearly alleges that Michaels "failed to timely pay [the putative class] all of

their final wages following separation of employment," and defines a "Waiting Time Penalties" subclass of those who were denied rest breaks in the three years prior to the filing of the Complaint.[1]  (FAC ¶¶ 11, 14.)

Michaels calculates the amount in controversy for Plaintiff's Section 203 claim is approximately $18,200,000.  (Opp'n at 12.)  Of Michaels's non-exempt employees in California, 14,405 employees either quit or were discharged between November 1, 2012 and November 12, 2015.  (Supplemental Declaration of Doug Marker ("Supp. Marker Decl.") ¶ 7, Doc. No. 17-3.)[2] The average base hourly rate of pay for Michaels's nonexempt employees in California from 2011 to 2015 was $11.10 per hour.  (Id.)  Nonexempt employees typically worked at least four hours or more per shift.  (Id. ¶ 6.)  In fact, Michaels's time attendance system does not permit nonexempt employees in California to be auto-scheduled for shifts of less than four hours.  (Id.) Full-time employees are scheduled for longer shifts, typically eight hours.  (Id.)

Thus, Michaels calculated the amount in controversy by multiplying the average hourly rate of pay by a conservative estimate of 4 hours a day for each of the 14,000 employees Michaels estimates were terminated in the applicable statutory period.  (Opp'n at 12.)  Michaels assumes the terminated employees were owed the maximum penalty of 30 days wage.  (Id.)

It is not unreasonable to assume that every non-exempt employee terminated during the statutory period would have experienced at least one rest break violation – and therefore would not have been paid certain wages due – because the FAC alleges that Michaels "maintained a policy or practice" of not providing rest periods of at least ten minutes for each four hour work period, and "at all relevant times" failed to pay Plaintiff and putative class members premium wages when required rest periods were not provided.  (FAC ¶¶ 25-26).  See Ibarra, 775 F.3d at 1198 (holding that the amount-in-controversy requirement can be calculated "using reasonable assumptions underlying the defendant's theory of damages exposure").  Plaintiff argues that

---

[1] The statute of limitations in California for claims based on the nonpayment of wages is three years.  Pineda v. Bank of Am., N.A., 50 Cal. 4th 1389, 1398 (2010) (affirming that Cal. Code Civ. Proc. § 338 applies to section 203 claims).

[2] The Court finds that the Declaration and Supplemental Declaration of Doug Marker (Doc. Nos. 1-5, 17-3) are the kind of "summary-judgment-type" evidence contemplated by the Ninth Circuit in Ibarra.  775 F.3d at 1197.  Marker described his employment relationship with Michaels, and detailed his familiarity with Michaels's electronic human resources database, which his associates accessed with his knowledge to retrieve the data relied upon.  (Supp. Marker Decl. ¶¶ 1-2.)  Marker declares this database is maintained "in the regular course of business."  (Id. ¶ 2.)  Marker attests to how and when information is entered into the database, and that he regularly relies on the data maintained therein in connection with his job responsibilities.  (Id. ¶ 2.)  Accordingly, the Court finds his declaration does not lack foundation and is properly supported by personal knowledge.  Cf. Duberry v. J. Crew Grp., Inc., No. 214CV08810SVWMRW, 2015 WL 4575018, at *4 (C.D. Cal. July 28, 2015); Townsend v. Brinderson Corp., No. CV 14–5320 FMO, 2015 WL 3970172, *5 (C.D. Cal. June 30, 2015).

Michaels cannot estimate the amount in controversy without providing evidence of how many employees <u>actually missed</u> rest breaks. (Reply at 5.) But "a removing defendant is not required to go so far as to prove Plaintiff's case for him by proving the actual rates of violation." <u>Unutoa</u>, 2015 WL 898512 at *3; <u>see also</u> <u>Sanchez v. The Ritz Carlton</u>, No. CV 15-3484 PSG, 2015 WL 4919972, at *3 (C.D. Cal. Aug. 17, 2015). Notably, Plaintiff does not assert or provide any evidence to support a different violation rate. <u>See</u> <u>Unutoa</u>, 2015 WL 898512 at *3 (denying motion to remand, noting "Plaintiff fails to assert any different rate of violation or submit evidence indicating a contrary rate…"); <u>see also</u> <u>Lopez v. Aerotek, Inc.</u>, No. SACV 14–803 CJG, 2015 WL 2342558, at *3 (S.D. Cal. May 21, 2015) (denying motion to remand, noting "although afforded the opportunity to do so on this motion, Plaintiff does not assert or suggest an alternative violation rate on which the Court should rely"). Plaintiff has alleged a broad, uniform policy of failing to provide rest breaks. For the limited purpose of assessing the amount in controversy, it is reasonable to assume from Plaintiff's allegations, and lack of evidence submitted to the contrary, that every class member experienced at least one rest break violation during their employment with Michaels.

Further, it is not unreasonable for Michaels to assume that each employee would be entitled to the maximum wage penalty – thirty days – for waiting time violations. The FAC alleges Michaels "at all relevant times" failed to pay Plaintiff and other class members additional premium wages for their missed rest periods. (FAC ¶ 26). <u>See</u> <u>Tajonar v. Echosphere, LLC</u>, No. CV 14-2732 LAB, 2015 WL 4064642, at *4-5 (S.D. Cal. July 2, 2015) (finding reasonable the defendant-employer's assumption that each employee was entitled to the maximum thirty day penalty). Plaintiff does not allege, and submits no evidence indicating, that Michaels at any time paid a single member of the FAC's "Waiting Time Penalties Class" wages due after the class member's termination but before the thirty day statutory period expired. Accordingly, the Court finds Michaels's assumption of the thirty day maximum wage penalty reasonable.

However, a few aspects of Michaels's calculations require revision. First, the statute of limitations for Plaintiff's Section 203 claim ran for three years from September 30, 2012 until the filing of the Complaint on September 30, 2015, yet Michaels provides the number of employees terminated between November 1, 2012 and November 12, 2015 (Supp. Marker Decl. ¶ 7). This time period omits one month of the relevant period (September 30, 2012 to October 31, 2012) and overextends one month and twelve days after the Complaint was filed. Perhaps in an attempt to cure this error, although without explanation, Michaels reduces the estimated number of terminated employees from 14,405 to 14,000. (Opp'n at 12.) Although imprecise, the Court finds this estimate to be conservative.[3] Moreover, even if this estimate is off by thousands of

---

[3] If Michaels terminated 14,405 employees from November 1, 2012 to November 12, 2015 (1107 days), on average 13 employees were terminated each day. By including a time period twelve days over the three-year statute of limitations, on average Michaels's calculation overstates the number of terminated employees by 156 (13 terminated employees x 12 days). Thus, 14,249 is a reasonable estimate for the number of employees terminated between September 30, 2012 and September 30, 2015. 14,000 is therefore very conservative, even allowing for the possibility that significantly more terminations occurred between September 30, 2015 and November 12, 2015 than between September 30, 2012 and October 31, 2012.

employees, it would not alter the jurisdictional outcome since the estimated amount in controversy far exceeds $5 million.

Second, Marker attests that the minimum wage in California between April 19, 2013 and November 4, 2015 was $8.00 per hour, and that Michaels's average hourly pay between 2011 to 2015 was $11.10 per hour.  (Supp. Marker Decl. ¶ 5.)  Michaels has not presented any evidence as to the average hourly pay over relevant time period, which is three years before the filing of the Complaint.  Thus, the Court will employ what is assuredly an extremely conservative estimate that all employees were paid the minimum wage of $8.00 from September 30, 2012 to September 30, 2015. [4]

Even with these modifications, the amount in controversy easily exceeds $5 million.  Based on a minimum wage of $8 per hour for an average of 4 hours per day, the average daily wage would have been $32 for employees terminated between September 30, 2012 and September 30, 2015.  The penalty owed to each employee would be $960 ($32 x 30 days).  Based on the estimate that at least 14,000 employees were terminated during the relevant time period, a conservative estimate for the amount in controversy for Section 203 penalties is $13,440,000.

The total amount in controversy is likely even higher.  The actual average wage was indisputably more than $8 per hour, since the minimum wage in California was $9 from July 1, 2014 to September 30, 2015.  Additionally, the Court notes that this calculation does not take into account Plaintiff's claims for failure to provide rest periods and failure to provide accurate wage statements.  Thus, although the Court might wish that Michaels had provided more precise figures for the time period in question given that they appear to have all the relevant information in their human resources database, based on the Court's conservative calculations using the evidence presented, the Court has no difficulty concluding that it is more likely than not that the amount in controversy far exceeds $5 million.

## IV.  CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's Motion to Remand the Case to California State Court.  (Doc. No. 10.)

**IT IS SO ORDERED.**

---

[4] This estimate is unquestionably lower than the actual average wage paid to Michaels's employees, since the minimum wage increased to $9.00 per hour effective July 1, 2014.  See History of California Minimum Wage, California Department of Industrial Relations, available at https://www.dir.ca.gov/iwc/MinimumWageHistory.htm.